```
                    ___ FILED        ___ RECEIVED
                    ___ ENTERED      ___ SERVED ON
                              COUNSEL/PARTIES OF RECORD

                         DEC 2 8 2010

                       CLERK US DISTRICT COURT
                         DISTRICT OF NEVADA
                    BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JONATHON E. SIEBEN et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 3:09-cv-00642-RCJ-VPC |
| ) | |
| COUNTRYWIDE HOME LOANS, INC. et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

This case arises out the foreclosure of Plaintiffs' mortgages on two properties. Pending before the Court are four motions: two motions to dismiss, a motion to remand, and a motion to stay. Plaintiffs have not responded to the motions to dismiss but have filed notices that they intend not to respond until their motion to remand is resolved.[1] For the reasons given herein, the Court grants the motions to dismiss in part and denies them in part, denies the motion to remand, and denies the motion to stay as moot.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs are Carrie A. Sieben, Jonathon E. Sieben, and Linda Lawton.[2] The fifty-seven

---

[1] This constitutes consent to granting the motions. L.R. Civ. Prac. 7-2(d).

[2] Linda Lawton's relationship, if any, to Plaintiffs' attorney Rick Lawton is unknown, but if they are husband and wife Mr. Lawton may have violated his ethical duty to avoid conflicts of interest by obtaining an economic interest in the subject matter of litigation in which he appears as an attorney. *See* Nev. R. Prof. Conduct 1.8(i) ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . .").

page form Complaint consists largely of generalized grievances about the mortgage and banking industries. There are some relevant facts pled therein, however (beginning on page 26 of the Complaint), and what is lacking in the Complaint is available in the requests for judicial notice filed by various Defendants.

On October 12, 2004, Plaintiffs Jonathon and Carrie Sieben, husband and wife ("the Siebens"), gave a promissory note and deed of trust ("DOT") to lender Countrywide Home Loans, Inc. ("Countrywide") for $540,000 in order to purchase real property located at 1930 Dream Sky Ct. ("the Dream Sky Property"). (*See* Dream Sky DOT 1–4, Oct. 12, 2004, ECF No. 5, Ex. A). The trustee on the Dream Sky DOT is CRC Real Estate Services ("CRC"). (*See id.* 2).

On April 6, 2005, the Siebens gave a promissory note and DOT to Countrywide for $949,000 in order to purchase real property located at 16965 Rue du Parc ("the Rue du Parc Property"). (*See* First Rue du Parc DOT 1–4, Apr. 6, 2005, ECF No. 5, Ex. D). The trustee on the First Rue du Parc DOT is Recontrust Co., N.A. ("Recontrust"). (*See id.* 2). On May 6, 2005, the Siebens gave another promissory note and DOT to Countrywide for an $80,000 home equity line of credit ("HELOC"), secured against the Rue du Parc Property. (*See* Second Rue du Parc DOT 1–3, May 6, 2005, ECF No. 5, Ex. J). The trustee on the Second Rue du Parc DOT is Recontrust. (*See id.* 2). On November 9, 2006, the Siebens gave yet another promissory note and DOT to Countrywide for a $308,000 HELOC, secured against the Rue du Parc Property. (*See* Third Rue du Parc DOT 1–3, Nov. 9, 2006, ECF No. 5, Ex. L).

After becoming delinquent on the $308,000 HELOC, Plaintiffs signed a loan modification agreement ("LMA"). (*See* LMA, Dec. 3, 2008, ECF No. 5, Ex. N). The copy of the LMA adduced by Defendants is not executed by Countrywide, however. (*See id.* 4). Plaintiffs allege to have assigned the rights to the causes of action as to the Rue du Parc Property to Linda Lawton. (*See* Compl. ¶ 33). The stage of, and statutory propriety of, foreclosure is not clear. No notice of default appears in the record, so the Court cannot determine whether a proper party

1  recorded it, if one has been recorded at all.

2  Plaintiffs sued Defendants Countrywide; Countrywide Financial Corp.; Merscorp, Inc.; Mortgage Electronic Registration Systems, Inc. ("MERS"), Bank of America Corp., N.A.; Recontrust Co., N.A.; Blanca Scott; Patricia F. Kidd; and Lisa Klimenko in state court, asserting fourteen causes of action. Defendants removed. The case was transferred to MDL Case No. 2119 in the District of Arizona, and this Court stayed the case pending remand. In accordance with the Judicial Panel on Multidistrict Litigation's partial remand order, Judge Teilborg has determined that the first cause of action and part of the third, fourth, and tenth through twelfth causes of action (insofar as they do not concern MERS) have been remanded to this Court. (*See* Am. Order 8:16–17, June 4, 2010, ECF No. 24). The Court may therefore rule on the following causes of action without a risk of inconsistent rulings by the MDL court: (1) Unfair Lending Practices Under Nevada Revised Statutes ("NRS") Section 589D.100; (3) Injunctive Relief; (4) Declaratory Relief; (10) Civil Conspiracy; (11) Racketeering Under NRS Section 207.470; and (12) Unjust Enrichment.

## II. LEGAL STANDARDS

### A. Remand for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377. Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Additionally, a court may raise the question of subject matter jurisdiction sua sponte at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must

dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

A district court's jurisdiction extends to cases removed from state court under particular circumstances. 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). In cases removed from state court, a federal court later finding a lack of subject matter jurisdiction does not dismiss, but must remand to state court. 28 U.S.C. § 1447(c). A decision to remand a case removed on any other basis than civil rights removal jurisdiction under 28 U.S.C. § 1443 "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

A defect in removal exists where jurisdiction is predicated purely on diversity and one or more defendants is a citizen of the forum state. *See* § 1441(b). This is the "forum defendant" rule. However, the citizenship of a defendant who has been fraudulently joined is discounted. *Ritchie v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Where fraudulent joinder is alleged, a court does not take the allegations of citizenship in the complaint as true but permits the defendant seeking removal to present facts showing fraudulent joinder. *See id.* "Joinder is fraudulent [i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris* USA, 582 F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted) (alteration in original).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

*Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III. ANALYSIS

#### A. Motions to Remand and to Stay

The Court denies the motion to remand. Plaintiffs have sued three non-diverse, forum-resident Defendants: Scott, Kidd, and Klimenko (collectively, "the Individual Defendants"). The Individual Defendants are fraudulently joined, however, and their joinder therefore does not defeat diversity.

An agent is personally liable to third parties for his own torts, regardless of whether he is acting on behalf of a corporate principal within the scope of his employment, but unless the agent and the third party agree, the agent is not liable on contracts entered into by the agent on behalf of the principal where the principal is disclosed. *See* Restatement (Third) of Agency § 7.01 & cmt. b (2006). Agents in Nevada can be personally liable in tort for misrepresentations they make to third parties. *See Nev–Tex Oil & Gas v. Precision Rolled Prods.*, 782 P.2d 1311, 1311 (Nev. 1989) (citing *Carrell v. Lux*, 420 P.2d 564, 576 (Ariz. 1966); *Pentecost v. Harward*, 699 P.2d 696, 699 (Utah 1985)). Although the Nevada Supreme Court has not directly ruled on the question, the states appear to be in agreement that an agent cannot be liable on a contract entered into on behalf of a principal where the agent has disclosed the principal. *See, e.g., Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. 1985); *Rathbon v. Budlong*, 15 Johns. 1, 2–3 (N.Y. 1818) (holding that an employee of a company could not be not liable in contract for actions taken on behalf of corporation).

The Individual Defendants cannot be liable in contract here, because they are alleged only to have acted in their capacity as agents for institutional Defendants. Furthermore, they are

alleged only to have "participated in the procurement, drafting, or presentment of the documents and transactions creating the causes of action alleged herein." This is not enough to state a tort claim against these individuals under *Iqbal* and *Twombly* because it is not a tort to "participate[] in the procurement, drafting, or presentment of [loan and mortgage] documents." There are no factual allegations indicating how these Defendants are liable for any tort due to this activity. It is consistent with the Complaint that the Individual Defendants merely handed papers to Plaintiffs to sign, without even knowing much about what was in them or having any intent to defraud. It is also consistent with the Complaint that they merely printed copies of the documents or performed some other innocuous task touching upon the documents that would not possibly give rise to tort liability. Finally, the causes of action currently before the Court fail on the merits under Rule 12(b)(6) even as against the institutional Defendants.

The Court finds that the Individual Defendants are fraudulently joined and denies the motion to remand. Even if remand were otherwise appropriate, part of the case is still pending before the MDL in the District of Arizona, and a remand order applying only to certain causes of action in the case would be a procedural catastrophe. Finally, the motion to stay is denied as moot because it simply requests a stay until a ruling on the present motion to remand.

**B.     Motions to Dismiss**

    **1.     Unfair Lending Practices Under NRS Section 589D.100**

Plaintiffs purchased over a million dollars worth of homes and took out over a third of a million dollars in credit against those homes with the legitimate goal of profiting from rising home prices. They now allege—after the housing bubble burst—that they were preyed upon because the lender didn't scrutinize their income closely enough. Plaintiffs obtained the loans in the present case between 2004 and November 9, 2006. The statute of limitations under section 598D.100 is three years, *see* Nev. Rev. Stat. § 11.190(3)(a), and the present case was brought on September 18, 2009. The statute of limitations therefore bars this cause of action as to all of the

loans except the $308,000 HELOC executed on November 9, 2006.

Section 598D.100 was amended in 2007, with an effective date of June 13, 2007. *See* 2007 Nev. Stat. 2844–46. Therefore, the pre-2007 version of the statute applies to the present case. The prior statute, which applies here, made it actionable if a lender made "a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets . . . ." Nev. Rev. Stat. § 598D.100 (2006). Plaintiffs have not alleged facts indicating a violation of the statute but have simply alleged in conclusory fashion that Defendants violated it. (*See* Compl. ¶ 45). This is insufficient; Plaintiffs must "alleg[e] specific facts showing how Defendants failed to adhere to this statutory requirement . . . ." *Urbina v. Homeview Lending, Inc.*, 681 F. Supp. 1254, 1259–60 (D. Nev. 2009) (Hunt, C.J.) (dismissing a claim under the post-2007 version of the statute). Much of this cause of action is based on a claim that the lender did not properly explain MERS' role. Plaintiffs also claim that the loans were based on "stated income" with no verification of that income. Plaintiffs fail to allege whether they in fact incorrectly stated their income on the loan documents. Moreover, the statute does not require any particular verification method, but only a determination of the ability of the borrower to repay from assets other than an estimated future increase in equity. Plaintiffs appear to admit that the lender gave them the loan based on the income they reported to the lender. This is sufficient under the statute. "The lender should have known I was lying about my income" is not a particularly convincing argument, at least not under the pre–2007 version of the statute. A lender has the right to presume the borrower is not lying on his application. The lender bears the risk in this regard, because the lender will realize the loss upon foreclosure. Such a practice may indeed be reckless, but it is reckless on the part of both the lender and the borrower, and the lender may bear this risk if it wishes to. Under the post-2007 version of the statute, which requires a "commercially reasonable means" of determining the ability to repay, an argument could be made that a lender

who does not verify stated income beyond the signature of the borrower has not fulfilled its duties under the statute, but the pre-2007 version of the statute applies in this case. The Court dismisses this cause of action.[3]

### 2. Injunctive and Declaratory Relief

Because the underlying causes of action will be dismissed, these causes of action will also be dismissed (as to the non-MERS Defendants).

### 3. Civil Conspiracy

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1994) (citing *Wise v. S. Pac. Co.*, 35 Cal. Rptr. 652 (Ct. App. 1963); *Bliss v. S. Pac. Co.*, 321 P.2d 324 (Or. 1958)). A corporation cannot conspire with its employees in their official capacities. *Id.*

Plaintiffs allege a conspiracy between the institutional Defendants, but they allege no specific agreement. Plaintiffs allege only that one or more Defendants failed to inform "Nevada mortgagors" of their rights. (*See* Compl. ¶ 101). This alleges no agreement, much less an agreement to engage in unlawful activity, and it does not even identify Plaintiffs as the particular victims of the alleged conspiracy. Next, Plaintiffs allege that several Defendants "continue to eject Nevadans from their homes notwithstanding knowledge of their own illegal conduct and unclean hands . . . ." (*Id.*). This does not cure the deficiencies. No agreement is pled. The Court dismisses this cause of action (as to the non-MERS Defendants).

///

---

[3] Defendants also assert that Plaintiffs waived all claims under the $308,000 HELOC in paragraph 5 of the LMA, but the agreement Defendants quote (without citation to the record) is not the LMA adduced, which does not appear to waive claims. (*See* LMA 3. ECF No. 5, Ex. N). Defendants have apparently quoted the wrong agreement.

### 4. Racketeering Under NRS 207.470

Under Nevada's RICO statute, a private party can bring a civil action for treble damages, attorney's fees, and costs for injures sustained by a violation of section 207.400. *See* Nev. Rev. Stat. § 207.470. Plaintiffs allege Defendants engaged in racketeering. Plaintiffs, however, nowhere identify which unlawful act under section 207.400 they believe Defendants to have committed. Plaintiffs simply quote the definition of "racketeering" under section 207.390 and allege that Defendants engaged in racketeering through predatory lending practices. Plaintiffs have not identified two predicate offenses required to constitute "racketeering." *See* § 207.390. Such crimes include murder, manslaughter, mayhem, certain batteries, kidnapping, sexual assault, arson, robbery, extortion, seduction, forgery, burglary, grand larceny, bribery, assault with a deadly weapon, certain frauds, etc. *See* § 207.360. If the predicate acts are intended to be frauds, they are not pled sufficiently under Rule 12(b)(6), much less under Rule 9(b). The Court dismisses this cause of action (as against the non-MERS Defendants).

### 5. Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))). Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839 P.2d at 613 (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)).

Here, Plaintiffs specifically allege contracts. Those contracts, the notes and deeds of trust, specify their terms. Contracts exist governing the relationship between Plaintiffs and Defendants. Plaintiffs do not allege any benefit bestowed upon any Defendant that is not subject to a contract. The Court dismisses this cause of action (as against the non-MERS Defendants).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 7) is DENIED.

IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 8) is DENIED as moot.

IT IS FURTHER ORDERED that the Motions to Dismiss (ECF Nos. 6 and 27) are GRANTED as to the first cause of action, GRANTED as to third, fourth, and tenth through twelfth causes of action with respect to the non-MERS Defendants, and DENIED as to the remaining causes of action for lack of jurisdiction, as these currently remain with Judge Teilborg in Case No. 2:09-md-02119-JAT in the District of Arizona.

IT IS SO ORDERED.

Dated: December 28, 2010

_____
ROBERT C. JONES
United States District Judge